IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| BILL GEORGE, JOE C. JOHNSON PERRY BROWN, JACQUELINE C. McCLENDON, DOUG PETERS, and BILLY DIAL in Their Official and Individual Capacities; and THE WALTON COUNTY WATER AND SEWERAGE AUTHORITY, | * * * * * |
| Plaintiffs, | * |
| vs. | * |
| WALTON COUNTY BOARD OF COMMISSIONERS, | CASE NO. 3:05-CV-32 (CDL) * |
| | * |
| Defendants | * |

O R D E R

The Court presently has pending before it Defendants' Motion to Dismiss.  For the reasons set forth below, Defendants' motion is granted as to all of Plaintiffs' federal law claims, and those claims are dismissed with prejudice.  The Court declines to exercise jurisdiction over Plaintiffs' claims arising under Georgia law, and those claims are dismissed without prejudice.

BACKGROUND

This lawsuit arises from a dispute involving the Walton County Water and Sewerage Authority ("the Authority").  During the 2005 session of the Georgia General Assembly, the Georgia legislature enacted S.B. 333, local legislation requested by the Walton County Board of Commissioners.  This legislation reconstituted the Authority.  Among other changes, S.B. 333 changed the method for selecting members of the Authority board and eliminated the Authority

board positions that existed prior to the adoption of S.B. 333. Plaintiffs are six of the nine incumbent Authority board members whose positions were eliminated as a result of S.B. 333. Plaintiffs claim that S.B. 333 is an unconstitutional bill of attainder and that it violates their rights to free speech and equal protection under the United States and Georgia Constitutions. Defendants seek dismissal of all of Plaintiffs' claims because none of them state a claim upon which relief may be granted.

The Georgia General Assembly first created the Authority in 1972 by means of local legislation. The Authority's purpose was to provide water and sewer treatment facilities to residents of Walton County. 1972 Ga. Laws 3624-26. Initially, the Authority consisted of five members who were "elected by a majority vote of the users of the facilities of the Authority at their annual meeting." *Id.* at 3625. In 1988, the Georgia General Assembly amended the statute relating to the powers of the Authority and the method of selecting its members. The 1988 legislation increased the number of members from five to nine. 1988 Ga. Laws 4106. The five members who were in office at the time of the change retained their positions, but the law changed the way in which their successors were to be selected and specified how the four new members were to be selected. *Id.* Under the 1988 law, three members were to be "appointed" by the governing authority of Walton County, three members were to be "appointed by a majority vote" of the Authority's ratepayers, and the governing authorities of the cities of Loganville, Monroe, and Social Circle were to "appoint" one member each. *Id.* In 1994, the Georgia General

2

Assembly again amended the statute, this time providing that members of the Authority would be compensated $75.00 per meeting attended and that the chairperson of the Authority would be compensated in an amount not to exceed $1800 per month.  1994 Ga. Laws 4677.

In 2005, the Georgia General Assembly, at the request of the Walton County Commission, amended the statute regarding the powers and duties of the Authority.  The County Commission and the Walton County local legislative delegation sought reconstitution of the Authority due to the rapid growth of Walton County and the planning and construction of a reservoir designed to fill Walton County's growing water needs.  S.B. 333, 148th Gen. Assem., Reg. Sess. (Ga. 2005).  S.B. 333 made significant changes to the Authority, including (1) reduction in the number of Authority members from nine to seven, (2) termination of the terms of Authority members who were selected under prior law, (3) modification of the procedure for selecting new Authority members—all seven new Authority members were to be appointed by the Walton County Board of Commissioners, and (4) reduction in the length of Authority members' terms from five years to one year.  *Id.* § 2.  Laws in conflict with S.B. 333 were repealed.  *Id.* § 6.  According to the General Assembly's stated purposes for enacting S.B. 333, the planning and construction of the reservoir increased the importance of having Authority members who represented the entire county, rendering "obsolete the election of three members" by the ratepayers.  *Id.* § 1.  In addition, appointment of Authority members by the governing authorities of Monroe,

3

Loganville, and Social Circle was found to be obsolete because those cities managed their own water and sewer systems.  *Id.* § 1.

Plaintiffs maintain that this reconstitution was an unconstitutional scheme designed to punish them for their views regarding the proper operation of the Authority.[1]  Plaintiffs seek a declaratory judgment that S.B. 333 is unconstitutional and unenforceable, and they seek a permanent injunction barring Defendants from enforcing S.B. 333.  Defendants respond that they had the legal right and responsibility to request local legislation modifying the Authority to accomplish legitimate governmental purposes regarding the future operation of the Authority.  Defendants seek dismissal of Plaintiffs' claims for failure to state claims upon which relief may be granted.

DISCUSSION

*1.  Motion to Dismiss Standard*

When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the factual allegations in the Complaint as true and

---

[1]Specifically, Plaintiffs claim that S.B. 333 violates 42 U.S.C. § 1983 ("§ 1983") based on violations of (1) the Bill of Attainder Clause, U.S. Const. art. I, § 10; (2) the First Amendment, U.S. Const. amend. I; and (3) the Equal Protection Clause, U.S. Const. amend. XIV.  Plaintiffs also alleged that S.B. 333 violates the Voting Rights Act of 1965, 42 U.S.C. § 1973c, because S.B. 333 had not been pre-cleared by the Department of Justice.  The Department of Justice issued a pre-clearance letter regarding S.B. 333 on or about June 29, 2005, thus extinguishing Plaintiffs' claims based on lack of pre-clearance.  Plaintiffs concede that any further action under the Voting Rights Act must be brought before a three-judge panel.  This Court does not have jurisdiction over such an action.  Plaintiffs further claim that S.B. 333 violates O.C.G.A. § 1-3-11, as well as the Bill of Attainder, Equal Protection, and Freedom of Speech and Assembly clauses of the Georgia constitution.  *See* Ga. Const. art. I § I ¶¶ II, V, IX, X.

4

construe them in the light most favorable to Plaintiffs.  *See Hardison v. Cohen*, 375 F.3d 1262, 1263 (11th Cir. 2004).  The Court may only grant a 12(b)(6) motion if it is "'clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  The Court evaluates each of Plaintiffs' claims using this standard.

   *2. Bill of Attainder Claim*

   Plaintiffs contend that S.B. 333 is an unconstitutional bill of attainder.  They argue that S.B. 333 was intended to punish them for their disagreement with Defendants regarding the handling of a reservoir project.  To prove Defendants' punitive purpose, Plaintiffs seek an opportunity to conduct discovery regarding the intent of Defendants in requesting passage of S.B. 333.  The issue presently before the Court is whether Plaintiffs' Complaint states a bill of attainder claim, so that this lawsuit, including discovery, should proceed.

   The United States Constitution prohibits the states from enacting bills of attainder.  U.S. Const. art. I, § 10.  A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial."  *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977).  The Bill of Attainder clause reflects "the Framers' belief that the Legislative Branch is not so well suited as politically independent judges and juries to the task of ruling upon

5

the blameworthiness of, and levying appropriate punishment upon, specific persons." *Id.* at 469 (quoting *United States v. Brown*, 381 U.S. 437, 445 (1965)).

The "'deprivation of any rights, civil or political, previously enjoyed'" can constitute a forbidden attainder "if the attending circumstances and causes of the deprivation demonstrated that the deprivation amounted to 'punishment.'" *Foretich v. United States*, 351 F.3d 1198, 1217 (D.C. Cir. 2003) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 320 (1866)).   The Court must therefore determine whether Plaintiffs have alleged sufficient facts to support a claim that the enactment of S.B. 333 "punishes" them for bill of attainder purposes.  In deciding whether a statute inflicts forbidden punishment, the Court makes three inquiries:  "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a [legislative] intent to punish.'" *Selective Serv. Sys. v. Minn. Pub. Interest Research Group,* 468 U.S. 841, 852 (1984) (quoting *Nixon*, 433 U.S. at 473, 475-76, 478).  These criteria have been viewed as an "independent—though not necessarily decisive—indicator of punitiveness." *See Foretich*, 351 F.3d at 1218; *accord Selective Serv. Sys.,* 468 U.S. at 852-56; *Nixon*, 433 U.S. at 473-84.

a. *Historical Test*

Under the first prong of the bill of attainder punishment analysis, the Court must determine whether S.B. 333 falls within the historical meaning of legislative punishment. Historically, bills of attainder imposed the death penalty. The list of punishments forbidden by the Bill of Attainder Clause has expanded to include lesser punishments, such as legislative prohibition against participation in specified employment or certain professions. *Selective Serv. Sys.*, 468 U.S. at 852. Not every burden or restraint is congruous with historical notions of legislative punishment, however. To fit within the historical meaning of a bill of attainder, the deprivation must be "disproportionately severe" and "inappropriate to nonpunitive ends." *Nixon*, 433 U.S. at 473. Generally, the prohibition against bills of attainder focuses on legislative enactments that "set a note of infamy" on the persons to whom the enactment applies. *Foretich*, 351 F.3d at 1220. *See also United States v. Brown*, 381 U.S. 437, 453-54 (1965) (noting that historically, bills of attainder incorporated "judgment censuring or condemning" specific persons).

In this case, Plaintiffs argue that removal of incumbent public officials from office is precisely the type of legislative action that the bill of attainder clause was intended to prevent. They argue that S.B. 333 targeted them for removal as punishment for their disagreement with Defendants regarding the handling of a reservoir project. However, unlike a classic bill of attainder, S.B. 333 does not specifically identify any single individual to be removed from

office.  Instead, it reconstitutes the entire Authority, removing all members, even those who presumably do not share the views of the disgruntled Plaintiffs.

Plaintiffs' interpretation of S.B. 333 as a bill of attainder would render legislative modification by the Georgia General Assembly of legal entities that it creates extraordinarily difficult, if not impossible.  It is well established that the governmental unit that possesses the power to create an office has the power to abolish the office it created.  *Hussey v. Chatham County*, 268 Ga. 871, 872, 494 S.E. 2d 510, 512 (1998).  It is also clear that "the right of an incumbent to an office depends upon the law under which he holds" and that the right of the officer "is gone" if the legislature abolishes the office.  *Id.* (finding act which abolished joint city-county board of tax assessors—thus removing incumbent board members from office—to be constitutional exercise of legislative authority).  In this case, the General Assembly had the power to create the Authority, and it had the right to modify the Authority's powers and structure.  *See* 1988 Ga. Laws 4106; 1994 Ga. Laws 4675.  When it modified the Authority's powers and structure by enacting S.B. 333, the General Assembly did not single out any individual Authority member or subset of Authority members for removal; it did not condemn any Authority member; and it did not prevent previous Authority members from being reappointed to the Authority.[2]  S.B. 333 simply does not have any of

---

[2] Plaintiffs concede that if the General Assembly had simply abolished the Authority, that act would not have raised bill of attainder concerns because the legislature may abolish offices it created.  However, Plaintiffs contend that because the Authority remained in existence, the general rule announced in *Hussey* does not apply.  Under Plaintiffs' logic,

the historical characteristics of a bill of attainder.  Therefore, this factor supports a finding that it is not a bill of attainder.

>           *b. Functional Test*

Under the second prong of the bill of attainder punishment analysis, the Court must consider whether S.B. 333 "reasonably can be said to further nonpunitive legislative purposes."  *See Nixon*, 433 U.S. at 475-76.  Relevant to this inquiry are the connection between S.B. 333's purpose and the burden it imposes upon the incumbent Authority members.  *See Foretich*, 351 F.3d at 1221.  As mentioned, the stated purpose of S.B. 333 is to reconstitute the Authority based on the rapid growth of Walton County and the county's changing water needs.  It also reflects a particular need to have the Authority members be more accountable to the public because of the planning and construction of a new reservoir.  Plaintiffs suggest that removal of the Authority members as part of this reconstitution does not further these nonpunitive legislative purposes because there were alternative means for accomplishing these purposes that did not require the removal of incumbent Authority members.  Such alternatives suggested by Plaintiffs include increasing the number of members appointed by the Walton County Board of Commissioners or converting the Authority into an advisory body.  It is true that the Georgia General Assembly might have selected to marginalize the

---

though, the General Assembly could never reconstitute a local authority it created for any reason unless it completely abolished the authority or delayed the effects of the reconstitution by gradually phasing in any changes related to the number of members, the length of member terms, or the method of member selection.  The Court declines to place such arbitrary restrictions on the legislative discretion of a state government.

incumbent Authority members by effectively stripping them of their responsibilities, duties, and authority.  In addition, Plaintiffs concede that no constitutional problems would have been raised had the General Assembly simply abolished the Authority completely.  However, the General Assembly, in the exercise of its broad legislative discretion, chose not to take any of these alternative courses, presumably concluding that reconstitution of the Authority was the preferable path to accomplish its purposes.  It cannot be seriously disputed that the purposes advanced by S.B. 333 are nonpunitive and that there is a rational connection between the reconstitution of the Authority and S.B. 333's purpose.  Therefore, S.B. 333 does not impose "punishment" under the functional test, which supports a finding that it is not a bill of attainder.

> ### c. Motivational Test

The third and final prong of the bill of attainder punishment analysis is a motivational test:  "whether the legislative record evinces . . . [an] intent to punish."  *See Nixon*, 433 U.S. at 478.  Plaintiffs contend that they should be permitted to engage in discovery to question the County Commissioners about their motivation for requesting that the General Assembly enact local legislation reconstituting the Authority.  Pretermitting whether acceptance of Plaintiffs' position would open the litigation floodgates for disgruntled constituents to use legal proceedings to advance political positions that are best resolved at the ballot box, the Court observes that Plaintiffs ignore that S.B. 333 was enacted by the Georgia General Assembly, not the Walton County Board of

Commissioners.  The relevant intent for bill of attainder purposes is the intent of the legislative body enacting the law.  *Id.*; *see also Foretich*, 351 F.3d at 1225.  Therefore, the relevant intent in this case is the intent of the Georgia General Assembly in enacting S.B. 333.

Plaintiffs' allegations focus on the motivation of the Walton County Board of Commissioners.  Plaintiffs argue that the motivation of the Board of Commissioners can somehow be magically imputed to the entire Georgia General Assembly.  Yet, Plaintiffs do not even allege that the local legislation process was not followed.  Moreover, they do not allege that the local legislative delegation rubber-stamped the request by the County Commission, and then the entire General Assembly rubber-stamped the request of the local delegation.  All that can be determined from Plaintiffs' allegations is that the *Walton County Board of Commissioners* had bad motives for requesting local legislation to reconstitute the Authority; that they submitted a request for local legislation to their local legislative delegation to reconstitute the Authority; that the local legislative delegation, following the proper procedures, introduced S.B. 333 in the General Assembly; and that the General Assembly, following its own rules, properly enacted S.B. 333.  Plaintiffs' Complaint is simply devoid of any allegation that the Georgia General Assembly, in its enactment of S.B. 333, had any motivation to punish Plaintiffs.[3]  This lack of

---

[3] The Court is aware that Plaintiffs' Complaint generally alleges that the purpose of S.B. 333 is to punish Plaintiffs "for lawful public positions and policies pursued in the course of carrying out their public duties."  Compl. ¶ 29; *see also* Compl. ¶¶ 32, 36.  However, reading the Complaint as a whole, it is clear that Plaintiffs are attributing this

11

improper motivation on the part of the legislative body that
ultimately had the sole legal authority to adopt the alleged bill of
attainder supports a finding that S.B. 333 is not a bill of
attainder.

Based on the historical, functional, and motivational analyses
of Plaintiffs' allegations regarding S.B. 333, the Court finds that
S.B. 333 does not amount to "punishment" for bill of attainder
purposes.  Therefore, Plaintiffs' bill of attainder claim must be
dismissed.

   3.  *First Amendment Claim*

Plaintiffs contend that Defendants sought enactment of S.B. 333
because Defendants disagreed with Plaintiffs' political positions
concerning the financing of the reservoir project.  Therefore,
Plaintiffs argue, S.B. 333 violates the First Amendment of the United
States Constitution.  *See, e.g., R.A.V. v. City of St. Paul,* 505 U.S.
377, 382 (1992) (noting that the First Amendment generally prevents
government from proscribing speech or expressive conduct because of
disapproval of the ideas expressed).  Plaintiffs contend that S.B.
333 is a content-based restriction on speech and is thus
presumptively invalid.  *See id.*  In the alternative, Plaintiffs argue

---

purpose to the Walton County Board of Commissioners, not the Georgia
General Assembly, charging that the Walton County Board of Commissioners
had an improper motive in seeking the local legislation.  *See* Compl. ¶ 20
("The motivation of the Walton County Board of Commissioners to seek the
enactment of this local legislation was punitive in nature."), Compl. ¶ 22
("[T]he Commissioners chose to use local legislation to remove all
incumbent members of the Authority from office and to transfer their powers
and functions to the County.").

that the intermediate standard of review of *United States v. O'Brien*, 391 U.S. 367 (1968) applies and that S.B. 333 fails that standard.[4]

As with their bill of attainder claim, Plaintiffs consistently ignore the undisputed fact that S.B. 333 was enacted by the Georgia General Assembly.  It was the General Assembly's action that resulted in Plaintiffs losing their positions.  The Walton County Board of Commissioners did not have the legal authority, nor did it attempt to exercise such authority, to abolish Plaintiffs' positions.  The County Commissioners could not punish Plaintiffs by discharging them even if that is what they desired.  Only the General Assembly could accomplish the removal of Plaintiffs.

Plaintiffs do not allege that the Georgia General Assembly had the intent to remove incumbent Authority members from office because of some articulated viewpoint expressed by Plaintiffs, nor do they allege that the local legislation process was tainted.  Without such allegations, there is no regulation of speech or conduct at all

_____

[4] Defendants contend that the First Amendment claim should be analyzed as a retaliatory discharge claim under the standard set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968).  Defendants cite *McKinley v. Kaplan*, 262 F.3d 1146 (11th Cir. 2001) in support of their argument that *Pickering* applies in this case.  In *McKinley*, a county commissioner removed his county film advisory board appointee because of a statement she made regarding a county policy.  That case is distinguishable from the instant case because the commissioner in *McKinley* had appointed the board member and had the authority to remove her at any time for any reason, making the relationship between commissioner and board member more analogous to an employment relationship than the relationship between the Authority members in this case and the Georgia General Assembly.  Nonetheless, even if *Pickering* and its progeny did provide the most appropriate standard to apply in this case, Plaintiffs would not be able to prevail because there is no allegation that their speech or expression played a "substantial part" in the *Georgia General Assembly's* decision to remove them from office.  See *Bryson v. City of Waycross*, 888 F.2d 1562, 1565-66 (11th Cir. 1989).  Rather, the allegations focus only on the motivation of Defendants. *See supra* note 3 and accompanying text.

because the law on its face does not regulate speech or conduct—it does not provide that all Authority members articulating a certain viewpoint or taking a particular action will be removed. *Contra, e.g., O'Brien*, 391 U.S. at 367 (upholding law prohibiting destruction of selective service certificates because there was a sufficiently important governmental interest in regulating the "nonspeech" element of such destruction to justify incidental limitations on the "speech" element). The Court recognizes that the petition does allege that "the predominant purpose behind S.B. 333 was . . . to penalize [Plaintiffs] for lawfully publicly articulated positions and policies pursued in the course of carrying out their public duties," but it is clear from the Complaint and from the briefs and hearings on this matter that Plaintiffs' claim is based upon the motivation of Defendants in seeking the local legislation rather than the General Assembly's motivation in enacting it. *See* Compl. ¶¶ 20, 22; *see supra* note 3 and accompanying text. Without an allegation that the *Georgia General Assembly's* predominant purpose in enacting S.B. 333 was to retaliate against Plaintiffs for their speech or expression or an allegation that the General Assembly failed to follow the local legislation process, the Court cannot find that S.B. 333 impermissibly infringes upon Plaintiffs' First Amendment rights.

Even if the Court were to find that the petition sufficiently alleged that S.B. 333 constitutes a law regulating speech or expression, the Court would not be able to conclude that it impermissibly infringes upon Plaintiffs' First Amendment rights. S.B. 333 is not content-based. It does not on its face regulate

14

speech at all, nor does it make any distinctions based on speech or expression.   Under *United States v. O'Brien*, a content-neutral regulation will be sustained "[1] if it furthers an important or substantial governmental interest; [2] if the governmental interest is unrelated to the suppression of free expression; [3] and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377; *accord Turner Broadcasting Sys., Inc.* v. F.C.C., 512 U.S. 622, 662 (1994).   S.B. 333 clearly furthers an important governmental interest in that it aims to reconstitute the Authority to reflect Walton County's changing water needs and subject the Authority to greater public accountability.   This governmental interest is unrelated to the suppression of free expression. S.B. 333 does not regulate speech or expression at all, and the only allegation of any legislative motive related to the suppression of free expression relates to the motivation of the Walton County Board of Commissioners in seeking the legislation, not the Georgia General Assembly's motive in enacting it.   Any incidental restriction on Plaintiffs' alleged First Amendment freedoms is no greater than is essential to the furtherance of the General Assembly's interest in reconstituting the Authority to ensure that it would be subject to greater public accountability.

    For these reasons, the Court finds that Plaintiffs have failed to state a claim that S.B. 333 violates the First Amendment to the United States Constitution.

4.  *Equal Protection Claim*

Plaintiffs also assert an Equal Protection claim based upon a classification due to speech.  They argue that S.B. 333 singles out Plaintiffs for adverse legal treatment because of their political positions concerning the financing of the reservoir project.  It is true that the Supreme Court has recognized a First Amendment component to Equal Protection, but as Plaintiffs recognize, these cases extend to statutes or ordinances that create a *content-based* regulation of expression.  *See, e.g., Carey v. Brown,* 447 U.S. 455, 461-62 (1980) ("When government regulation discriminates among speech-related activities in a public forum, the Equal Protection Clause mandates that the legislation be finely tailored to serve substantial state interests, and the justifications offered for any distinctions it draws must be carefully scrutinized."); *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 94-95 (1972) (striking, on Equal Protection grounds, a Chicago ordinance that prohibited only non-labor picketing because there was no "appropriate governmental interest" supporting the distinction—the "First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content"); *see also generally Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 126 (1991) (discussing equal protection analysis in First Amendment context and noting that the laws to which this analysis applies are content-based).

Having found that S.B. 333 is not content-based, *see supra*, the Court finds that Plaintiffs have failed to state a claim that S.B.

16

333 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (doc. 8) is granted as to all of Plaintiffs' federal law claims. Those claims are therefore dismissed with prejudice.  Having disposed of each of Plaintiffs' federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  Therefore, those claims are dismissed without prejudice.

IT IS SO ORDERED, this 2nd day of September, 2005.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE

17